The policy deductible applies.

3. **Trees, Shrubs and Other Plants.**

    We cover trees, shrubs, plants, lawns or landscaping on the **"residence premises"**; for loss caused by the following Losses We Cover: Fire or Lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **"residence premises"**, Vandalism or malicious mischief or Theft.

    We will pay up to 5% of the amount of insurance that applies to the dwelling for all trees, shrubs, plants, lawns or landscaping. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for **"business"** purposes.

    This coverage is additional insurance and does not reduce the amount of insurance.

    The policy deductible applies.

4. **Fire Department Service Charge.**

    We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss under Section I LOSSES WE COVER.

    This coverage is additional insurance and does not reduce the amount of insurance.

    No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss under Section I – LOSSES WE COVER and for no more than 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property.

    This coverage reduces the amount of insurance that applies to the property being removed.

    The policy deductible applies.

6. **Credit Card Coverage and Identity Fraud Expense Coverage.**

    We will pay up to $5,000 in the aggregate for all loss and defense costs resulting from **Credit Card Coverage** and **Identity Fraud Expense Coverage**.

    For the purposes of **Credit Card Coverage** and **Identity Fraud Expense Coverage**, a series of acts committed by any one person in which any one person is concerned or implicated is considered to be one loss, even if a series of acts continues into a subsequent policy period.

    a. **Credit Card Coverage** also includes, fund transfer cards, forgery and counterfeit money. Under **Credit Card Coverage**, we pay for all loss and defense costs resulting from:

        (1) The legal obligation of any **"insured"** to pay because of the theft or unauthorized use of credit cards issued to or registered in any **"insured's"** name;

        (2) Loss resulting from theft or unauthorized use of electronic fund transfer cards or access devices used for deposit, withdrawal or transfer of funds, issued to or registered in any **"insured's"** name;

        (3) Loss to any **"insured"** caused by forgery or alteration of any **"insured's"** check or negotiable instrument written on an **"insured's"** bank account. This does not include loss by the acceptance of a forged, altered or counterfeit check, or other negotiable instrument, by an **"insured"**.

        (4) Loss to any **"insured"** through acceptance in good faith of counterfeit United States or Canadian paper currency.

Ex. 10, P. 35

HO-9R(02) (07-08)

0901119ca428d3d1   Case 4:20-cv-00041-SLG   Document 26-13   Filed 11/17/21   Page 1 of 20

For losses covered by this additional insurance we will provide defense as follows:

(1) We may investigate and settle any claim or suit as we deem to be appropriate. Our duty to defend a claim or suit ends when the amount we pay or tender for the loss equals the applicable amount of insurance.

(2) If a suit is brought against any **"insured"** as a result of theft or unauthorized use of a credit card or fund transfer card, we will provide a defense at our expense by counsel of our choice. We have the option to defend at our expense any **"insured"** against any suit for the enforcement of payment under the forgery coverage.

This is additional insurance and does not reduce the amount of insurance.

No deductible applies to **Credit Card Coverage.**

b. **Under Identity Fraud Expense Coverage**, we pay for **"expenses"** and defense costs incurred by any **"insured"** as the direct result of **"identity fraud"**.

With respect to the provisions of this coverage only, the following definitions are added:

**"Identify Fraud"** means the act of knowingly transferring or using, without lawful authority, a means of identification of any **" insured"** with the intent to commit, or aid or abet, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

**"Expenses"** means:

(1) Costs for notarizing fraud affidavits or similar documents for financial institutions or similar credit grantors or credit agencies that have required that such affidavits be notarized;

(2) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar credit grantors;

(3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchandise, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

(4) Loan application fees for re-applying for a loan or loans when original application is rejected solely because the lender received incorrect credit information resulting from **"identity fraud"**;

(5) Reasonable attorney fees incurred, with our prior consent, for:

(a) Defense of lawsuits brought against the **"insured"** by merchants or their collection agencies; and

(b) The removal of any criminal or civil judgments wrongly entered against an **"insured"**.

(6) Charges incurred for long distance telephone calls to merchants, law enforcement agencies, financial institutions or similar credit grantors, or credit agencies to report or discuss an actual **"identity fraud"**;

(7) Research fees charged by merchants, financial institutions or similar credit grantors, or credit agencies resulting from **"identity fraud"**.

This coverage is additional insurance and does not reduce the amount of insurance.

Ex. 10, P. 36

A $100 deductible applies to **Identity Fraud Expense Coverage.**

The following exclusions apply to **Credit Card Coverage** and **Identity Fraud Expense Coverage**:

(1) We do not cover forgery, theft or use of a credit card, electronic fund transfer card or access device:

   (a) By a resident of your household or any **"insured"**;
   (b) By a person who has been entrusted with the card(s) or device(s);
   (c) If any **"insured"** has not complied with all terms and conditions under which the cards or devices are issued.

(2) We do not cover loss arising out of **"business"** pursuits, dishonesty, fraud, or criminal activity of any **"insured"**.

7. **Loss Assessment.** We will pay up to $10,000 for your share of loss assessment charged against you by a corporation or association of property owners for an event that occurs during the policy period, when the assessment is made as a result of **"sudden and accidental"** direct physical loss to the property, owned by all members collectively, caused by a loss under Section I – LOSSES WE COVER for **DWELLING PROTECTION COVERAGE AND OTHER STRUCTURES PROTECTION COVERAGE**, subject to all provisions of the policy.

This coverage does not apply to assessments made as a result of damage caused by:

a. Earthquake; or
b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the **"residence premises"**.

We do not cover loss assessments charged against you or a corporation or association of property owners by any government body.

The limit of $10,000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

This coverage is not limited by the expiration of this policy.

This coverage is additional insurance and does not reduce the amount of insurance.

No deductible applies to this coverage.

8. **"Collapse"** For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving **"collapse"** of a building or any part of a building only when the **"collapse"** is caused by one or more of the following:

   a. **"Named peril(s)"** apply to covered buildings and personal property for loss insured by this additional coverage.

   b. Decay that is hidden from view, meaning damage that is unknown prior to collapse or that does not result from a failure to reasonably maintain the property;

   c. Insect or vermin damage that is hidden from view, meaning damage that is unknown prior to **"collapse"** or that does not result from a failure to reasonably maintain the property;

   d. Weight of contents, equipment, animals or people;

   e. Weight of rain which collects on a roof; or

   f. Use of defective material or methods in construction, remodeling or renovation if the **"collapse"** occurs during the course of the construction, remodeling or renovation.

Ex. 10, P. 37

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, water well, cistern, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the **"collapse"** of a building.

This coverage reduces the amount of insurance that applies to the damaged covered property.

The policy deductible applies.

9. **Lock Replacement.** When the dwelling door keys are stolen in a covered theft loss, we will pay the cost to:

    a. Change the combination in the lock hardware of the doors, or

    b. Change the lock hardware of the doors.

    The most we will pay for Lock Replacement is $250. No deductible applies to this coverage.

10. **Refrigerated Products**. We will pay you up to $500 for loss to the contents of a freezer or a refrigerator located on your **"residence premises"**, as a consequence of power failure or mechanical breakdown. This $500 limit is the most we will pay in any one loss regardless of the number of freezers or refrigerators.

    The Power Failure exclusion under Section I – LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION does not apply to Refrigerated Products.

    This coverage does not increase the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

11. **Land.** If a loss covered under Section I – LOSSES WE COVER damages a building on the **"residence premises"** insured under Dwelling Protection or Other Structures Protection and the same loss causes the land necessary to support the building insured under Dwelling Protection or Other Structures Protection to become unstable, we will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore such land.

    This coverage is additional insurance and does not reduce the amount of insurance.

    The policy deductible applies.

12. **Glass or Safety Glazing Material**

    We cover:

    a. The breakage of glass or safety glazing material caused by a loss under Section – I LOSSES WE COVER, which is part of a covered building, storm door or storm window; and

    b. Damage to covered property by glass or safety glazing material which is part of a building storm door or storm window.

    This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. An **"insured"** dwelling being constructed is not considered vacant.

    This coverage reduces the amount of insurance that applies to the damaged property.

    The policy deductible applies.

13. **Landlord's Furnishings.** We will pay up to $2,500 for your appliances, your carpeting and other household furnishings located in an apartment on the **"residence premises"** regularly rented or held for rental to others by any **"insured"**, for loss caused by **"named peril(s)"**, other than Theft.

*Ex. 10, P. 38*

0901119ca428d3d1  Case 4:20-cv-00041-SLG  Document 26-13  Filed 11/17/21  Page 4 of 20  USAA Confidential

The $2,500 limit is the most we will pay in any one loss regardless of the number of appliances, carpeting or other household furnishing involved in the loss.

This coverage reduces the Personal Property Protection amount of insurance.

The policy deductible applies.

14. **Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

    The limit for this coverage will not be more than 5% of the Coverage A – Dwelling Protection amount of insurance.

    This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

    The policy deductible applies.

15. **Temporary Living Expense.** We will pay up to $2,000 for necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by earthquake, volcanic eruption, landslide, or if a civil authority prohibits your use of the **"residence premises"** because an earthquake, volcanic eruption or landslide has occurred. This coverage is additional insurance and does not reduce the Loss of Use Protection amount of insurance.

    No deductible applies to this coverage.

16. **Fungus, Or Wet or Dry Rot.**

    1. We will pay up to a total of $2,500 for:

        a. The cost to treat, remove or dispose of **"fungus"**, or wet or dry rot, from covered property;

        b. The cost to tear out and replace any part of the building or other covered property as needed to gain access to the **"fungus"**, or wet or dry rot, and/or

        c. The cost to test, to detect, measure or evaluate air or property to confirm the absence, presence or level of **"fungus"**, or wet or dry rot, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reasonable probability that there is the presence of **"fungus"**

        which is the direct result of a loss under Section I – LOSSES WE COVER.

    2. We will pay up to $2,000 for the necessary increase in costs which you incur to maintain your normal standard of living when the **"residence premises"** is uninhabitable due to a loss caused by, resulting from, or consisting of **"fungus"**, or wet or dry rot, which is the direct result of Section I – LOSSES WE COVER.

    This coverage is additional insurance and does not reduce the amount of insurance.

    No deductible applies to this coverage once the policy deductible has been met.

17. **Military Uniforms and Equipment.** We will waive your deductible for loss to uniforms and military equipment, owned by you, including but not limited to clothing, insignia, flight cases, headsets, personal body armor and GPS devices for a loss caused by **"named peril(s)"** while you are on active or active reserve duty.

    This coverage reduces the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

*Ex. 10, P. 39*

0901119ca428d3d1
USAA Confidential
Case 4:20-cv-00041-SLG Document 26-13 Filed 11/17/21 Page 5 of 20

18. **War.** To the extent that coverage for **"war"** is provided here, item 1. f. under LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION and the **"war"** exclusion in any endorsement attached to this policy do not apply.

    We will pay up to $10,000 for:

    a. Direct loss or damage to your personal property caused by **"war"**; or:

    b. Abandonment as a consequence of **"war"**

    subject to the following conditions:

    This coverage applies only:

    a. To any **"insured"** who is subject to government reimbursement for loss to personal property under 31 USC 3721, commonly referred to as the Military Personnel and Civilian Employees Claims Act, as amended and supplemented, or any successor or replacement act; and

    b. To loss that occurs anywhere outside the Continental United States, Alaska and Hawaii.

    In addition to compliance with the other provisions of **Your Duties After Loss**, you must:

    a. Report your claim to the U.S. Government, its affiliate or agency, and comply with its requirements;

    b. Send us, within 60 days after our request, copies of all actual documents which outline the basis of the government's reimbursement for your loss including the amount paid.

    The **Suit Against Us** clause is changed for loss by **"war"** only:

    No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

    The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read:

    **"War"** loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

    Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

    We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

    This coverage reduces the Personal Property Protection amount of insurance.

    No deductible applies to this coverage.

19. **Electronic Media**, meaning songs, movies and other audio or video media, which you purchased and downloaded onto a computer or portable electronic media player. We will pay up to $250 for a loss covered under **"named peril(s)"**, provided that you maintain records to document the actual purchase of this media. This coverage does not include personal data or records.

    This coverage is additional insurance and does not reduce the Personal Property Protection amount of insurance.

    The policy deductible applies.

*Ex. 10, P. 40*

0901119ca428d3d1 USAA Confidential
Case 4:20-cv-00041-SLG Document 26-13 Filed 11/17/21 Page 6 of 20

# SECTION I - LOSSES WE COVER

**COVERAGE A - DWELLING PROTECTION COVERAGE AND COVERAGE B - OTHER STRUCTURES PROTECTION COVERAGE**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER – Coverages A and B unless excluded in Section I – LOSSES WE DO NOT COVER.

**COVERAGE C - PERSONAL PROPERTY PROTECTION**

We insure against **"sudden and accidental"**, direct, physical loss to tangible property described in PROPERTY WE COVER – Coverage C caused by a peril listed below unless the loss is excluded in **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION.**

1. **Fire or lightning.**

2. **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand, or dust enters through this opening.

    This peril includes loss to the **"watercraft"**, **"personal watercraft"**, and their trailers, furnishings, equipment and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **"Aircraft,"** including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning damage caused by or resulting from an impact with a **"motor vehicle"**. This does not include damage to personal property being transported by a **"motor vehicle"** unless this vehicle is itself involved in a collision.

7. **Smoke**, meaning **"sudden and accidental"** damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial smudging or operations.

8. **Vandalism or malicious mischief.**

9. **Theft**, including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, if other permanent residency is established or claimed elsewhere;

    b. In or to a dwelling under construction, or materials and, supplies for use in the construction until the dwelling is finished and occupied; or

    c. From that part of a **"residence premises"** rented by any **"insured"** to a person who does not qualify as an **"insured"**

    This peril does not include loss caused by theft that occurs away from the **"residence premises"** of:

    a. Property while at any other residence owned by, rented to, or occupied by any **"insured"** unless the **"insured"** has stayed at the temporary residence at any time during the 60 days immediately before the loss.

    b. **"Watercraft"**, or **"personal watercraft"** including their furnishings, equipment and outboard motors; or

    c. Trailers and campers.

Ex. 10, P. 41

HO-9R(02) (07-08)

0901119ca428d3d1
USAA Confidential
Case 4:20-cv-00041-SLG Document 26-13 Filed 11/17/21 Page 7 of 20

10. **Falling objects.**

    This peril does not include loss to property contained in a building unless the roof or an outside wall of a building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to property contained in a building.

12. **Discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. A plumbing system does not include a sump pump or sump well designed to drain subsurface water from the interior foundation area even if such overflow results from the mechanical breakdown of the sump pump.

    This peril does not include loss:

    a. To the system or appliance from which the water or steam escaped; or

    b. Caused by or resulting from freezing except as provided in the peril of Freezing below; or

    c. On the **"residence premises"** caused by discharge or overflow which occurs off the **"residence premises"**.

13. **Tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

14. **Freezing of a plumbing,** heating, air conditioning or automatic fire protective system or of a household appliance.

    This peril does not include loss on the **"residence premises"**, if you have failed to:

    a. Maintain heat in the building; or

    b. Shut off the water supply and drain the system and appliances of water.

15. **Damage from artificially generated electrical current.**

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I - LOSSES WE DO NOT COVER

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION.**

1. Unless otherwise stated in 3. below we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

    (i) The cause of the excluded event or damage that; or

    (ii) Other causes of the loss that; or

    (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have:

        (1) Maintained heat in the building; or

        (2) Shut off the water supply and drained the system and appliances of water;

*Ex. 10, P. 42*

HO-9R(02)  (07-08)    Page 15 of 34

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

   (1) Swimming pool, hot tub, or spa, including their filtration and circulation system; or

   (2) Fence, pavement, patio; or

   (3) Foundation, retaining wall or bulkhead; or

   (4) Pier, wharf or dock.

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief or breakage of glass and safety glazing materials, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Constant or repeated seepage or leakage of water or steam over a period of 14 days or more from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance;

f. Wear and tear, marring, deterioration;

g. Mechanical breakdown, latent defect, inherent vice, or any quality of the property that causes it to damage or destroy itself;

h. Smog, rust, electrolysis or other corrosion;

i. Smoke from agricultural smudging or industrial operations;

j. Discharge, dispersal, seepage, migration, release or escape of **"pollutants"** unless the discharge, dispersal, seepage, migration, release or escape is itself caused by **"named peril(s)"** of this policy.

k. Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

l. Birds, rodents, insects;

m. Animals owned or kept by any **"insured"**.

n. Vermin meaning animals, other than (m.) above, that access real or personal property for foraging or shelter and by their presence cause damage to such property. Vermin include, but are not limited to armadillos, bats, beavers, coyotes, ferrets, opossums, porcupines, raccoons, skunks and squirrels.

o. Nesting, infestation, discharge or release of waste products or secretions, by any birds, rodents, insects, vermin, or animals owned or kept by an **"insured"**.

p. Pressure from, or presence or intrusion of tree, shrub or plant roots.

2. If items 1.f. through 1.p. above cause water damage which is not otherwise excluded, we cover the resulting water damage, including the cost of tearing out and replacing any part of a building necessary to repair a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance. We do not cover loss to the system or appliance from which this water escaped.

3. If any items in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy.

Ex.10, P.43

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION:**

1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:

    (i) The cause of the excluded event or damage that; or

    (ii) Other causes of the loss that; or

    (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to

    produce the loss.

    a. **Ordinance or Law**, meaning the increased cost of demolition, repairs or rebuilding due to the enforcement or compliance with any ordinance or law regulating the construction, repair or demolition of a building or other structure other than as provided in ADDITIONAL COVERAGES, Building Ordinance or Law.

    b. **Earth Movement** arising from or caused by or resulting from human or animal forces or any act of nature, meaning:

        (1) Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

        (2) Landslide; mudslide or mudflow;

        (3) Subsidence, sinkhole, erosion or movement resulting from improper compaction, site selection or any other external forces;

        (4) Earth sinking, rising or shifting, expanding or contracting of earth, all whether combined with water or not;

    unless direct loss by fire, theft, explosion, or breakage of glass or safety glazing material which is part of a building, storm door or storm window results and then we will pay only for the resulting loss.

    c. **Water Damage** arising from, caused by or resulting from human or animal forces, any act of nature, or any other source. Water damage means damage caused by or consisting of:

        (1) Flood, surface water, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind; or

        (2) Any release, overflow, escape or rising of water otherwise held, contained, controlled or diverted by a dam, levee, dike or by any type of water containment, water diversion or flood control device; or

        (3) Water or water-borne material which backs up through sewers or drains or which overflows from a sump pump, sump well or similar device designed to drain water from the foundation area; or

        (4) Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps through a building, sidewalk, driveway, foundation, swimming pool or other structure;

    unless direct loss by fire, explosion or theft results from water damage and then we will pay only for the resulting loss.

*Ex. 10, P. 44*

d. **Power Failure**, meaning the failure of power or other utility service if the failure takes place off the **"residence premises"** except as provided in ADDITIONAL COVERAGES, Refrigerated Products.

If damage caused by a loss insured under Section I LOSSES WE COVER results on the **"residence premises"**, we will pay only for that damage.

e. **Neglect**, by or failure of any **"insured"** to use all reasonable means to save and preserve property at and after the time of a loss or damage or the event resulting in loss or damage.

f. **"War"** and any consequence of **"war"**, except as provided in ADDITIONAL COVERAGES, War. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard**, meaning

   (1) Any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   (2) Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Section I – LOSSES WE COVER.

   (3) This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

h. **Intentional Loss**, meaning loss arising out of any act any **"insured"** commits or conspires to commit with the intent to cause a loss. Even **"insureds"** who did not commit or conspire to commit the act causing the loss are not entitled to coverage.

i. **"Fungus"**, or Wet or Dry Rot, or Bacteria other than as provided in ADDITIONAL COVERAGES, **"Fungus"**, or Wet or Dry Rot.

j. **"Collapse"**, other than as provided in ADDITIONAL COVERAGES, **"Collapse"**.

k. **Diminution in value**, meaning any reduction in value that would remain after damaged property is repaired or replaced.

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

   a. **Weather Conditions** which includes but is not limited to heat, cold, humidity, rain, ice, snow, sleet, wind, hail or drought. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION, item 1. above to produce the loss.

   b. **Acts or decisions**, including the failure to act or decide, of any person, group, organization or governmental body;

   c. **Faulty, negligent, inadequate or defective**:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or maintenance.

      This limitation applies to loss or damage to any property on or off the **"residence premises"**.

Ex. 10, P. 45

HO-9R(02) (07-08)

## SECTION I - LOSS SETTLEMENT

We will not pay more than the amount of insurance that applies to the damaged, destroyed or stolen property as stated on the Declarations page unless such amount is increased due to ADDITIONAL COVERAGES or the Home Protector Coverage. Subject to the amount of insurance covered losses are settled as follows:

1. For the following property:

   a. Structures that are not buildings; and

   b. All covered structures whether or not they are buildings, if located away from the **"residence premises"**.

   We will pay the lesser of:

   a. The **"actual cash value"**; or

   b. Our cost to replace the property with property of like kind, quality, age and condition; or

   c. Our cost to repair or our cost to restore the property to the condition it was in just before the loss

2. All items under Property We Cover – Dwelling Protection and buildings on the **"residence premises"** under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

   a. When our cost to repair or replace the damaged property is less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.

   b. When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the **"actual cash value"**, not to exceed our cost to repair or our cost to replace the damaged part of the property.

      (1) To receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within one year after the date of loss, unless during this period you request in writing that this time limit be extended for an additional 180 days, and notify us within 30 days after the work has been completed.

      (2) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property, whichever is less.

3. Home Protector Coverage.

   You agree:

   a. To insure your buildings under Property We Cover – Dwelling Protection and Other Structures Protection, on the **"residence premises"**, for the full replacement cost at the time this policy is issued; and

   b. To accept any increase in coverage that results from the application of the Adjustment to Building Cost provision if it is deemed necessary by us. You must pay for any added premium; and

   c. To tell us within 90 days of the start of any additions or other physical changes to buildings on the **"residence premises"** which increases the value by the greater of:

      (1) $25,000; or

      (2) 5% of the current Dwelling Protection amount of insurance.

   You must pay any resulting premium.

HO-9R(02) (07-08)   Ex.10, p.46   Page 19 of 34

If you comply with these requirements and if as a result of a covered loss, you have exhausted the amount of insurance:

a. Applying to buildings covered under Property We Cover – Dwelling Protection or Other Structures Protection; or

b. Provided under ADDITIONAL COVERAGES, Debris Removal; or

c. Provided under ADDITIONAL COVERAGES, Building Ordinance or Law;

then, we will pay up to an additional 25% of the amount of insurance applying to the damaged building. The most we will pay for a., b., or c., either singly or in any combination is 25% or the amount actually and necessarily spent to repair or replace the damaged building, whichever is less.

4. Loss Settlement – Personal Property. We will settle losses to covered property at full replacement cost without deduction for depreciation, subject to the following:

REPLACEMENT COST COVERAGE DEFINED

Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:

a. Similar to the insured article, and

b. Of like quality and usefulness.

PROPERTY COVERED

a. Personal property covered in Property We Cover – Personal Property Protection, except personal property stated in Property Not Eligible below;

b. If covered in this policy; awnings, carpeting, and household appliances, whether or not attached to buildings.

PROPERTY NOT ELIGIBLE

Replacement cost coverage does not apply to:

a. Items of rarity or antiquity that cannot be replaced;

b. Articles whose age or history contributes substantially to their value. These include, but are not limited to, memorabilia, souvenirs and collectors items;

c. Motorized golf carts and their equipment and accessories;

d. Articles not maintained in good or workable condition;

e. Property that is either obsolete or useless to the **"insured"** at the time of loss;

f. Property that you do not intend to repair, replace, or restore.

LOSS SETTLEMENT

a. For property that is eligible for replacement cost coverage it is our option to:

   (1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation; or

   (2) Pay you the cost to repair or restore the property to the condition it was in just before the loss; or

   (3) Pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $2,500

Ex. 10, P. 47

HO-9R(02) (07-08)　　　　　　　　　　Page 20 of 34

c. You make a claim for loss on an **"actual cash value"** basis and then make claim within one year after the loss for any additional liability under the terms of this provision.

d. For property that is not eligible for replacement cost coverage, it is our option to:

   (1) Pay you the **"actual cash value"**; or

   (2) Replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

   (3) Pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Amount of Insurance that applies to Personal Property Protection. Nor will we pay more than any Special Amounts of Insurance that apply as stated in this policy.

## SECTION I - CONDITIONS

1. **Insurable Interest and Amount of Insurance.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To the **"insured"** for more than the amount of the **"insured's"** interest at the time of loss; or

   b. For more than the applicable amount of insurance

   whichever is less.

2. **Your Duties After Loss.** In case of a loss to which this insurance may apply you must see that the following are done:

   a. Promptly notify us or our agent about the loss. This policy will not provide any coverage for your loss if you fail to notify us about the loss within one year after the loss actually occurs;

   b. Notify the police in case of loss by theft, vandalism, or any other criminal act;

   c. Notify the credit card or fund transfer card company in case of loss under ADDITIONAL COVERAGES, Credit Card Coverage, and Identity Fraud Expense Coverage;

   d. (1) Protect the property from further damage;

   (2) Make reasonable and necessary repairs to protect the property; and

   (3) Keep an accurate record of repair expenses;

   e. Cooperate with us in the investigation of a claim;

   f. At our request prepare an inventory of claimed personal property showing the quantity, description, age, replacement cost and amount of loss. Include with the inventory all bills, receipts and related documents that support the items listed and substantiate the figures shown in the inventory;

   g. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to and sign, while not in the presence of any other **"insured"**:

   (a) Statements; and

   (b) Examinations under oath; and

*Ex. 10, p.48*

    (4) Produce employees, members of your household or others for examinations under oath to the extent it is within your power to do so;

  h. Send to us, within 60 days after our request, your signed proof of loss which sets forth, to the best of your knowledge and belief:

    (1) The time and cause of loss;

    (2) The interest of the **"insured"** and all others in the property involved and all liens on the property.

    (3) Other insurance which may cover the loss;

    (4) Changes in title or occupancy of the property during the term of the policy;

    (5) Specifications of damaged buildings and detailed repair estimate;

    (6) The inventory of claimed personal property described in 2.f. above;

    (7) Receipts for Additional Living Expenses and Temporary Living Expenses incurred and records that support the Fair Rental Value loss; and

    (8) Evidence or affidavit stating the amount and cause of loss that supports a claim under ADDITIONAL COVERAGES, Credit Card Coverage, and receipts, bills or other records that support your claim for expenses under Identity Fraud Expense Coverage.

3. **Volcanic Eruption Period**. One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

4. **Loss or Damage to a Pair or Set**. In case of loss or damage to a pair or set we may elect to:

  a. Repair or replace any part to restore the pair or set to its value before the loss; or

  b. Pay the difference between **"actual cash value"** of the property before and after the loss.

5. **Matching of Undamaged Property**. In case of damage to property, we will not pay to repair or replace undamaged property due solely to:

  a. Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

  b. Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

6. **Appraisal**. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

  a. Pay its own appraiser; and

  b. Bear the other expenses of the appraisal and umpire equally.

Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

Case 4:20-cv-00041-SLG Document 26-13 Filed 11/17/21 Page 15 of 20
0901119ca428d3d1
USAA Confidential

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **"actual cash value"**, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance**. Other insurance includes the coverage and any deductible required by such other insurance.

    If a loss covered by this policy, other than a loss covered by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage or golf cart coverage; is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

    Coverage provided by the ADDITIONAL COVERAGE, Credit Card Coverage and Identity Fraud Expense Coverage is excess over other insurance that covers the same loss. This coverage is also excess over any other contractual conditions, rights or benefits that provide relief from or indemnification for your obligations to pay any amount to any third party resulting from a loss covered by this coverage. In no event will we pay more than the applicable amount of insurance.

    This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us**. No action can be brought against us unless you have:

    a. Given us notice of the loss,

    b. Complied with all other policy provisions, and

    c. Started the action

    within two years after the date of the loss

9. **Our Option**. If we give you written notice within 30 days after we receive your notice of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment**. You may not abandon property to us for any reason.

12. **Mortgagee Clause**. The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any covered loss under Section I – LOSSES WE COVER for Dwelling Protection or Other Structures Protection will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim because you or any other **"insured"** has failed to comply with the terms and conditions of this policy that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

Ex. 10, P.50

a. Promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; and

b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. Sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

   (1) The time and cause of loss;
   (2) The interest of the mortgagee and all others in the property involved and all liens on the property;
   (3) Other insurance which may cover the loss;
   (4) Changes in title or occupancy of the property during the term of the policy;
   (5) Specifications of damaged buildings and detailed repair estimates.

   Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d. Submits to examination under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee**. We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Salvage and Recovered Property.**

    a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement Condition. At our option, property that we have paid for or replaced becomes our property.

    b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

15. **Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

    a. Intentionally concealed or misrepresented any material fact or circumstance;

    b. Engaged in fraudulent conduct; or

    c. Made false statements which, if known by us, would have caused us not to:

       (1) Issue the policy;
       (2) Issue the policy in as large an amount;
       (3) Provide coverage for the hazard resulting in the loss; or
       (4) Issue the policy for the same amount of premium or at the same rate

*Ex. 10, P. 51*

HO-9R(02) (07-08)           Page 24 of 34

0901119ca428d3d1    Case 4:20-cv-00041-SLG    Document 26-13    Filed 11/17/21    Page 17 of 20    USAA Confidential

relating to the issuance of this policy or in the presentation of a claim, we may deny coverage or declare the entire policy void as to the interest of all **"insureds"** and refund the unearned premium as of the date of the conduct described in a., b., or c. above. Any unearned premium refund will be offset by any amounts paid to any **"insured"** under the policy after the date of the conduct described in a., b., or c. above.

We reserve all rights to seek recovery of the amount we pay from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

16. **Duties to Determine and Maintain Policy Limits**. It is your responsibility to determine and maintain adequate amounts of insurance to totally replace or repair your dwelling, other structures and personal property.

17. **Adjustment to Building Cost**. The amount of insurance for Section I, Dwelling Protection, shown in the Declarations of this policy, will be revised at each policy renewal to reflect the rate of change in the replacement cost of your dwelling. The resulting limit will be rounded to the next $1,000.

Section I, Other Structures Protection, Personal Property Protection and Loss of Use, will also be adjusted. The rules then in use by us will determine the new amounts for these coverages.

These amounts will not be reduced without your consent.

You have the right to refuse any resulting change in amount. You must do so before the effective date of such change.

We have the right to change to another replacement cost calculation tool as of any renewal date. We will give you at least 30 days prior written notice if we do this. Such change must apply to all similar policies issued by us.

## SECTION II - LIABILITY COVERAGES

**COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against any **"insured"** for **"damages"** because of **"bodily injury"** or **"property damage"** caused by an **"occurrence"** to which this coverage applies, we will:

1. Pay up to our limit of liability for the **"damages"** for which the **"insured"** is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. <u>Our duty to settle or defend ends when the amount we pay for **"damages"** resulting from the **"occurrence"** equals our limit of liability.</u> This coverage does not provide defense to any **"insured"** for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

**COVERAGE F - Medical Payments to Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing **"bodily injury"**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except **"residence employees"**. As to others, this coverage applies only:

1. To a person on the **"insured location"** with the permission of any **"insured"**; or

2. To a person off the **"insured location"** if the **"bodily injury"**:

0901119ca428d3d1    USAA Confidential
Case 4:20-cv-00041-SLG   Document 26-13   Filed 11/17/21   Page 18 of 20

a. Arises out of a condition on the **"insured location"** or the ways immediately adjoining;

b. Is caused by the activities of any **"insured"**;

c. Is caused by a **"residence employee"** in the course of the **"residence employee's"** employment by any **"insured"**; or

d. Is caused by an animal owned by or in the care of any **"insured"**.

## SECTION II - EXCLUSIONS

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to **"bodily injury"** or **"property damage"**:

   a. Which is reasonably expected or intended by any **"insured"** even if the resulting **"bodily injury"** or **"property damage"**:

      (1) Is of a different kind, quality or degree than initially expected or intended; or

      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

      However, this exclusion does not apply to **"bodily injury"** resulting from the use of lawful reasonable force by any **"insured"** to protect persons or property.

   b. (1) Arising out of or in connection with a **"business"** engaged in by any **"insured"**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **"business"**.

      (2) Arising out of the rental or holding for rental of any part of any premises by any **"insured"**. This exclusion does not apply to the rental or holding for rental of any **"insured location"**.

         (a) On an occasional basis if used only as a residence;

         (b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

         (c) In part, as an office, school, studio or private garage;

   c. Arising out of the rendering or failure to render **"professional services"**;

   d. Arising out of a premises;

      (1) Owned by any **"insured"**; or

      (2) rented to any **"insured"**; or

      (3) rented to others by any **"insured"**;

      that is not an **"insured location"**;

   e. Arising out of:

      (1) The ownership, maintenance, use, loading or unloading of **"motor vehicles"** including trailers, owned or operated by or rented or loaned to any **"insured"**;

      (2) The entrustment by any **"insured"** of a **"motor vehicle"** to any person; or

      (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using a **"motor vehicle"** excluded in paragraph (1) or (2) above.

Ex.10, P.53

This exclusion does not apply to the permissive use, loading or unloading of:

(1) A trailer not towed by or carried on a **"motor vehicle"**;

(2) A **"motor vehicle"** designed for recreational use off public roads, not subject to motor vehicle registration and;

   (a) Not owned by any **"insured"**; or
   (b) Owned by any **"insured"** provided the **"occurrence"** takes place on any **"insured location"**; or
   (c) Owned by any **"insured"** and designed or modified to operate at speeds not to exceed 15 miles per hour.

(3) A motorized golf cart that is designed to carry up to 4 persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an **"occurrence"**, is within the legal boundaries of:

   (a) A golfing facility and is parked or stored there, or being used by any **"insured"** to:
      (i) Play the game of golf or for other recreational or leisure activity allowed by the facility; or
      (ii) Travel to and from an area where **"motor vehicles"** or golf carts are parked or stored; or
      (iii) Cross public roads at designated points to access other parts of the golfing facility.
   (b) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an **"insured's"** residence.

(4) A **"motor vehicle"** not subject to motor vehicle registration which is:

   (a) Used to service any **"insured's"** residence; or
   (b) Designed for assisting the handicapped; or
   (c) In dead storage on an **"insured location"**.

f. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of; or
   (2) The entrustment by any **"insured"** to any person of; or
   (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

a **"watercraft"** or **"personal watercraft"**.

This exclusion does not apply to any **"watercraft"** owned or borrowed by, or rented to any **"insured"**:

(1) With inboard, outboard or inboard-outdrive motor power of up to 50 horsepower; or
(2) That is a sailing vessel, with or without auxiliary power, which is up to 35 feet in length.

This exclusion does not apply to any **"personal watercraft"** or **"watercraft"** that is being stored.

g. Arising out of:

   (1) The ownership, maintenance, use, loading or unloading of; or
   (2) The entrustment by any **"insured"** to any person; or
   (3) Vicarious liability, whether or not statutorily imposed, for the actions of anyone using:

an **"aircraft"** or **"hovercraft"**.

Ex.10, P.54