h. Caused directly or indirectly by **"war"** including any consequence of **"war"**. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

i. Arising out of the transmission of a communicable disease by any **"insured"**.

j. Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of **"pollutants"** however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

   (1) Request, demand or order that any **"insured"** or others test for, monitor, clean up, remove, contain, treat, detoxify, or assess the effects of **"pollutants"**; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **"pollutants"**.

l. Arising out of exposure to lead paint or other lead-based products.

m. Arising out of exposure to asbestos.

n. Arising out of or caused by the commission of, attempting to flee from, or avoiding apprehension for a criminal act for which intent is a necessary element.

o. Arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of or presence of any **"fungus"**, or wet or dry rot, or bacteria.

p. Arising out of your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property.

q. Arising out of any actual, alleged or threatened:

   (1) Sexual misconduct; or

   (2) Sexual harassment; or

   (3) Sexual molestation.

r. Arising out of any actual, alleged or threatened physical or mental abuse.

Exclusions d., e., f., and g. do not apply to **"bodily injury"** to a **"residence employee"** arising out of and in the course of the **"residence employee's"** employment by any **"insured"**.

2. **Coverage E - Personal Liability does not apply to:**

   a. Liability:

      (1) For any loss assessment charged against you as a member of an association, corporation or community of property owners other than as provided in SECTION II – ADDITIONAL COVERAGES, Loss Assessment.

      (2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

         (a) That directly relate to the ownership, maintenance or use of any **"insured location"**; or

         (b) Where the liability of others is assumed by any **"insured"** prior to an **"occurrence"**;

         unless excluded in (1) above or elsewhere in this policy.

HO-9R(02) (07-08)
Page 28 of 34

Ex. 10, P. 55

0901119ca428d3d1
Case 4:20-cv-00041-SLG Document 26-14 Filed 11/17/21 Page 1 of 15
USAA Confidential

b. **"Property damage"** to property owned by the **"insured"**.

c. **"Property damage"** to property rented to, occupied or used by or in the care of any **"insured"**. This exclusion does not apply to **"property damage"** caused by fire, smoke or explosion.

d. **"Bodily injury"** to any person eligible to receive any benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided, whether or not actually provided;

   by any **"insured"** under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law.

e. **"Bodily injury"** or **"property damage"** for which any **"insured"** under this policy:

   (1) Is also an **"insured"** under a nuclear energy liability policy; or

   (2) Would be an **"insured"** under that policy but for the exhaustion of its limit of liability.

   A nuclear energy liability policy is one issued by:

   (1) Nuclear Energy Liability Insurance Association;

   (2) Mutual Atomic Energy Liability Underwriters;

   (3) Nuclear Insurance Association of Canada; or any of their successors.

f. **"Bodily injury"** to you or any **"insured"** within the meaning of part a., b. or c. of **"insured"** as defined.

g. Punitive or exemplary damages, fines, or penalties.

3. **Coverage F - Medical Payments to Others** does not apply to **"bodily injury"**:

   a. To a **"residence employee"** if the **"bodily injury"**:

   (1) Occurs off the **"insured location"**; and

   (2) Does not arise out of or in the course of the **"residence employee's"** employment by an **"insured"**.

   b. To any person eligible to receive benefits:

   (1) Voluntarily provided; or

   (2) Required to be provided;

   under any:

   (1) Workers' compensation law; or

   (2) Non-occupational disability law; or

   (3) Occupational disease law.

   c. From any:

   (1) Nuclear reaction; or

   (2) Nuclear radiation; or

   (3) Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   (4) Any consequence of any of these.

   d. To any person, other than a **"residence employee"** of any **"insured"**, regularly residing on any part of the **"insured location"** or residing on any part of the **"insured location"** for a period in excess of thirty consecutive days prior to the date of loss, if other permanent residency is established or claimed elsewhere.

Ex. 10, P. 56

# SECTION II - ADDITIONAL COVERAGES

Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following and do not reduce the limit of liability.

1. **Claim Expenses**. We pay:

   a. Expenses we incur and costs taxed against any **"insured"** in any suit we defend;

   b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

   c. Reasonable expenses incurred by any **"insured"** at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit;

   d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies;

   e. Prejudgment interest awarded against the **"insured"** on that part of the judgment we pay. If we make an offer to pay the applicable limit of liability, we will not pay any prejudgment interest based on that period of time after the offer.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by any **"insured"** for **"bodily injury"** covered under this policy. We will not pay for first aid to you or any other **"insured"**.

3. **Damage to Property of Others**. We will pay, at replacement cost, up to $1,000 per **"occurrence"** for **"property damage"** to property of others caused by any **"insured"**.

   We will not pay for **"property damage"**:

   a. To the extent of any amount recoverable under SECTION I of this policy;

   b. Caused intentionally by any **"insured"** who is 13 years of age or older;

   c. To property owned by any **"insured"**;

   d. To property owned by or rented to a tenant of any **"insured"** or a resident in your household; or

   e. Arising out of:

      (1) A **"business"** engaged in by any **"insured"**;

      (2) Any act or omission in connection with a premises owned, rented or controlled by any **"insured"**, other than the **"insured location"**; or

      (3) The ownership, maintenance, occupancy, operation, use, loading or unloading of **"aircraft"**, **"hovercraft"**, **"watercraft"**, **"personal watercraft"** or **"motor vehicle"**. This exclusion e.(3) does not apply to a **"motor vehicle"** that:

         (a) Is designed for recreational use off public roads,

         (b) Is not owned by any **"insured"**; and

         (c) At the time and place of the **"occurrence"**, is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

4. **Loss Assessment**. We will pay up to $10,000 for your share of loss assessment charged against you, by a corporation or association of property owners, when the assessment is made as a result of:

Ex.10. P.57

0901119ca428d3d1
USAA Confidential
Case 4:20-cv-00041-SLG Document 26-14 Filed 11/17/21 Page 3 of 15

a. **"Bodily injury"** or **"property damage"** caused by an **"occurrence"** not excluded under SECTION II of this policy; or

b. Liability for an act committed by a director, officer or trustee during the policy period in the capacity as a director, officer or trustee, provided:

   (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

   (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as an owner or tenant of the **"residence premises"**.

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $10,000 is the most we will pay for loss arising out of:

a. One **"occurrence"**, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

SECTION II, Coverage E  Personal Liability Exclusion 2.a.(1) does not apply to this coverage.

This coverage is not limited by the expiration of this policy.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage E limit is shown in the Declarations. This is our limit for all damages from each **"occurrence"** regardless of the number of **"insureds"**, claims made or persons injured. All **"bodily injury"** and **"property damage"** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one **"occurrence"**.

   The Coverage F limit is shown in the Declarations. This is our limit for all medical expenses payable for **"bodily injury"** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **"insured"**. This condition does not increase our limit of liability for any one **"occurrence"**.

3. **Concealment, Misrepresentation or Fraud**. If you or any other **"insured"**, whether before or after an **"occurrence"** or loss under this policy has:

   a. Concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements which if known by us, would have caused us not to:

      (1) Issue the policy;

      (2) Issue the policy in as large an amount;

      (3) Provide coverage for the hazard resulting in the loss; or

      (4) Issue the policy for the same amount of premium or at the same rate

relating to the issuance of this policy or in the presentation of a claim we may deny coverage as to the interest of all **"insureds"**.

Ex. 10, p. 58

We reserve all rights to seek recovery from any person committing concealment, misrepresentation or fraud for all payments made and cost incurred.

4. **Duties After Loss**. In case of an accident or **"occurrence"**, the **"insured"** will perform the following duties that apply. You will help us by seeing that these duties are performed:

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and **"insured"**;

      (2) Reasonably available information on the time, place and circumstances of the accident or **"occurrence"**; and

      (3) Names and addresses of any claimants and witnesses.

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit.

   c. Promptly forward to us every notice, demand, summons or other process relating to the accident or **"occurrence"**.

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to any **"insured"**;

      (3) With the conduct of suits and attend hearings and trials;

      (4) To secure and give evidence and obtain the attendance of witnesses.

   e. Under Damage to Property of Others, if we request, submit to us within 60 days after notice of the loss, a statement of loss and show the damaged property, if in the **"insured's"** control.

   f. The **"insured"** will not, except at the **"insured's"** own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the **"bodily injury"**.

5. **Duties of an Injured Person - Coverage F - Medical Payments to Others**. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

6. **Payment of Claim - Coverage F - Medical Payments to Others**. Payment under this coverage is not an admission of liability by any **"insured"** or us.

7. **Suit Against Us**. No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against any **"insured"**. Also, no action with respect to Coverage E can be brought against us until the obligation of the **"insured"** has been determined by final judgment or agreement signed by us.

8. **Bankruptcy of any Insured**. Bankruptcy or insolvency of any **"insured"** will not relieve us of our obligations under this policy.

9. **Other Insurance - Coverage E - Personal Liability**. This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Ex. 10, p.59

## SECTIONS I AND II - CONDITIONS

1. **Policy Period**. This policy applies only to loss in SECTION I or **"bodily injury"** or **"property damage"** in SECTION II, which occurs during the policy period.

2. **Liberalization Clause**. If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   a. A subsequent edition of this policy; or

   b. An amendatory endorsement.

3. **Waiver or Change of Policy Provisions**. A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you by postal mail at your mailing address shown in the Declaration or provided to you electronically if we have your consent and agreement on file to receive documents electronically

   Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) Upon discovery of fraud, concealment or misrepresentation made by or with the knowledge of any **"insured"** in obtaining this policy, continuing the policy, or presenting a claim under this policy; or

   (b) If the risk has changed substantially since the policy was issued; or

   (c) Upon discovery that the **"insured"** does not meet USAA Group membership eligibility requirements; or

   (d) Any other reason allowed by law.

   Cancellation can be done by notifying you at least 30 days before the date cancellation takes effect.

HO-9R(02)  (07-08)

Ex.10, P.60    Page 33 of 34

0901119ca428d3d1
Case 4:20-cv-00041-SLG   Document 26-14   Filed 11/17/21   Page 6 of 15
USAA Confidential

(4) When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

(5) If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by letting you know in writing 30 days before policy termination. This nonrenewal notice may be delivered to you, mailed to you by postal mail at your mailing address shown in the Declarations or provided to you electronically if we have your consent and agreement on file to receive documents electronically.

Proof of mailing, whether by postal mail or by electronic media or communication channel, will be sufficient proof of notice. Electronic notice will be provided upon placing it on our website pursuant to an electronic transaction agreement, or upon directing it to an electronic mailbox or voice channel that you designate for the purpose of receiving mail.

6. **Subrogation.** Any **"insured"** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **"insured"** must:

a. Sign and deliver all related papers;

b. Cooperate with us in a reasonable manner; and

c. Do nothing after a loss to prejudice such rights.

7. **Spouse Access.** The **"member"** and we agree that the **"member"** and resident spouse are customers and applicants for purposes of state and federal privacy and insurance laws. The resident spouse will have access to the same information available to the **"member"** and may conduct the same transactions as the **"member"** including making coverage changes, signing regulatory forms, terminating the policy, and selecting delivery preferences for policy documents.

The **"member"** may notify us that he/she no longer wants the resident spouse to have access or transaction authority on his/her policy, and we will not permit the resident spouse to access policy information or conduct transactions on this policy.

8. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. For the purpose of this condition, **"insured"** includes:

(1) Any member of your household who is an **"insured"** at the time of your death, but only while a resident of the **"residence premises"**; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 2008. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO CONTRACT PROVISIONS
## Alaska

(Applies to HO-3R, HO-6R & HO-9R unless otherwise noted)

### DEFINITIONS

5. **"Collapse"** is deleted and replaced by the following:

5. **"Collapse"** means:

   a. A sudden falling or caving in; or

   b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

### SECTION I

### SECTION I - PROPERTY WE COVER

**COVERAGE C - Personal Property Protection**

**Under Property We Do Not Cover:**

Item **1.** is deleted.

Item **3.** is deleted and replaced by the following:

3. **"Motor vehicle(s)"**. This includes but is not limited to the following while in or upon a **"motor vehicle"**.

   a. Equipment, accessories, and parts; or

   b. Any device or instrument for the transmitting, recording, receiving or reproduction of data, sound or pictures which is permanently installed in a **"motor vehicle"**. We do not cover antennas, tapes, wire, discs or other media, for use with any such device or instrument.

We do cover **"motor vehicle(s)"** or all other motorized land conveyances not subject to motor vehicle registration which are:

a. Used solely to service any residence; or

b. Designed for assisting the handicapped.

Subject to the provisions under Special Amounts of Insurance we also cover:

a. Motorized golf carts and their equipment and accessories; and

b. Motorized vehicles designed or modified to operate at speeds not to exceed 15 miles per hour and for use off public roads.

The following is added to **Property We Do Not Cover**:

Controlled substances included on Schedule I as defined by 21 United States Code Section 812, and as changed, updated, and republished by 21 Code of Federal Regulations Part 1308 at the time of loss. This exclusion applies whether or not state law allows use of the substance.

**Under COVERAGE D - Loss of Use Protection:**

The lead-in paragraph is deleted and replaced by the following:

The SECTION I - LOSSES WE DO NOT COVER apply to the coverage provided under Loss of Use below. The amount of insurance for Loss of Use shown in the Declarations is the total limit for the coverages that follow.

Item **3. Prohibited Use** is deleted and replaced by the following:

Ex. 10, P. 62    126446-1112__03

3. **Prohibited Use.** If a loss covered under SECTION I – LOSSES WE COVER results in an order from a civil authority prohibiting you from the use of the **"residence premises"** as a result of direct damage to neighboring premises by a loss covered under SECTION I – LOSSES WE COVER, we cover the Additional Living Expense or Fair Rental Value loss as provided under 1. and 2. above for not more than two weeks.

### ADDITIONAL COVERAGES

The lead-in paragraph is deleted and replaced by the following:

> Unless specifically addressed elsewhere in this policy, the coverages provided below are the only coverages provided for the following. The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated.

Under **6. Credit Card Coverage and Identity Fraud Expense Coverage**, item b., **"Expenses"** (3) is deleted and replaced by the following:

> (3) Lost wages as a result of time taken off from work to meet with, or talk to, law enforcement agencies, credit agencies, merchants, and/or legal counsel, or to complete fraud affidavits, not to exceed $250 per day;

HO-3R and HO-9R only:

Under **12. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

> This coverage does not include loss on the **"residence premises"** if the dwelling has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-6R only:

Under **11. Glass or Safety Glazing Material** the third paragraph is deleted and replaced by the following:

> This coverage does not include loss on the **"residence premises"** if the building containing the **"residence premises"** has been vacant for more than 180 consecutive days immediately before the loss. An insured dwelling being constructed is not considered vacant.

HO-3R only:

Under **18. War**, item b. is deleted and replaced by the following:

> b. Abandonment as a consequence of **"war"**;

### SECTION I - LOSSES WE COVER

### COVERAGE C - PERSONAL PROPERTY PROTECTION

Under **9. Theft**, item a. is deleted and replaced by the following:

> a. Committed by any **"insured"** or any other person regularly residing on any part of the **"insured location"** for a period in excess of thirty consecutive days, even if other permanent residency is established or claimed elsewhere.

Under **14. Freezing** is deleted and replaced by the following:

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

    This peril does not include loss on the **"residence premises"** while the dwelling is unoccupied, if you have failed to:

    a. Maintain heat in the building; or

    b. Shut off the water supply and drain the system and appliances of water.

### SECTION I - LOSSES WE DO NOT COVER

HO-3R and HO-9R only:

Ex.10, P.63

HO-ACPAK (04-13)

0901119ca428d3d1
Case 4:20-cv-00041-SLG   Document 26-14   Filed 11/17/21   Page 9 of 15
USAA Confidential

**LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION**

Item 1.a. is deleted and replaced by the following:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion applies only while the dwelling is vacant, unoccupied or being constructed and then, only if you have failed to:

   (1) Maintain heat in the building; or
   (2) Shut off the water supply and drain the system and appliance of water.

HO-9R only:

**SECTION I - LOSS SETTLEMENT**

Under item **4. Loss Settlement – Personal Property**, LOSS SETTLEMENT; item b. is deleted and replaced by the following:

b. We will pay no more than the **"actual cash value"** until repair or replacement of the damaged property is completed, unless the entire loss is less than $5,000.

**SECTION II - EXCLUSIONS**

1. **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**, in item e.:

   This exclusion does not apply to the permissive use, loading or unloading of:

is deleted and replaced by the following:

   This exclusion does not apply to the ownership, maintenance, permissive use, loading or unloading of:

**SECTION I and II - CONDITIONS**

6. **Subrogation** is changed in the HO-3R only:

Under item **6. Subrogation**, the first paragraph is deleted and replaced by the following:

6. **Subrogation.** Any "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

Item **8. Assignment** is deleted and replaced by the following:

8. **Assignment.** Assignment of any claim or this policy will not be valid unless we give our written consent.

Copyright, USAA, 2013. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Ex.10, P.64

HO-ACPAK (04-13)  Page 3 of 3

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.    HO-AK (03-09)

## ALASKA SPECIAL PROVISIONS

**SECTION I - PROPERTY WE COVER**

**COVERAGE D - Loss of Use Protection:**

The following paragraph is deleted:

> Except as provided in ADDITIONAL COVERAGE, Fungus, or Wet or Dry Rot, the Loss of Use coverage afforded under 1., 2., and 3. above does not apply to loss caused by "**fungus**", or wet or dry rot.

**ADDITIONAL COVERAGES**

For the HO-3R and HO-9R:

**14. Building Ordinance or Law** is deleted and replaced by the following:

**14. Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection and Other Structures Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than the greater of:

a. 10% of the Coverage A – Dwelling Protection amount of insurance; or

b. $25,000.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

For the HO-6R:

**12. Building Ordinance or Law** is deleted and replaced by the following:

**12. Building Ordinance or Law.** For loss caused by a loss under Section I – LOSSES WE COVER to buildings under Dwelling Protection, we will pay the increased costs which are required and you actually incur to comply with any ordinance or law governing the rebuilding, repair or demolition of the damaged property.

The limit for this coverage will not be more than the greater of:

a. 10% of the Coverage A – Dwelling Protection amount of insurance; or

b. $25,000.

However, we will not pay more than the Coverage A – Dwelling Protection amount of insurance.

This coverage is additional insurance and does not reduce the Dwelling Protection amount of insurance.

The policy deductible applies.

**16. Fungus, or Wet or Dry Rot,** is deleted.

In the HO-3R and HO-9R under item **18. War** and in the HO-6R under item **15. War:**

The following exception for **Suit Against Us** is deleted:

> The **Suit Against Us** clause is changed for loss by "**war**" only:
>
> > No action can be brought, unless the policy provisions have been complied with and the action is started within one year after the date of payment by the government.

The **Loss Settlement** clause in the Additional Coverage, **War** is deleted and replaced by the following:

HO-AK (03-09)      Ex. 10, P. 65      88681-0609 Page 1 of 6

The **Loss Settlement** clause in this policy is changed for loss by **"war"** only to read::

"War" loss to personal property under this policy is not payable until the U.S. Government has made its final payment to you for the loss under 31 USC 3721 as amended and supplemented, or any successor or replacement act.

Subject to all policy provisions, our payment will be the total amount of your loss minus the U.S. government payment.

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss, and satisfactory evidence of the amount of the U.S. Government payment, or we reach an agreement with you.

**SECTION I - LOSSES WE DO NOT COVER**

In the HO-3R and HO-9R **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND OTHER STRUCTURES PROTECTION,** the lead-in paragraph under item 1. is deleted and replaced by the following:

1. Unless otherwise stated in 3. below we do not insure for damage caused by or consisting of any of the following. However, these exclusions do not apply if the dominant cause of loss is not otherwise excluded under this policy.

In the HO-3R and HO-9R under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION** and in the HO-6R under **LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION AND PERSONAL PROPERTY PROTECTION:**

The lead-in paragraph under item 1. is deleted and replaced by the following:

1. We do not insure for damage caused by or consisting of any of the following. However, these exclusions do not apply if the dominant cause of loss is not otherwise excluded under this policy.

h. **Intentional Loss** is deleted and replaced by the following:

h. **Intentional Loss.** Meaning loss arising out of any act an "**insured**" commits or conspires to commit with the intent to cause a loss.. Even "**insureds**" who did not commit or conspire to commit the act causing the loss are not entitled to coverage. However, if you commit an act with the intent to cause a loss, we will provide coverage to an innocent "**insured**" victim of domestic abuse, as defined in AS 21.36.430 (c) to the extent of that person's interest in the property when the damage is proximately related to and in furtherance of domestic abuse.

i. "**Fungus**", **Wet or Dry Rot or Bacteria** is deleted and replaced by the following:

i. "**Fungus**", **Wet or Dry Rot or Bacteria**.

**SECTION I - LOSS SETTLEMENT** (applicable to HO-9R only)

Under item 2. paragraph a. is deleted and replaced by the following:

a. When our cost to repair or replace the damaged property is $5,000 or less, we will pay you the full replacement cost amount without deduction for depreciation.

**SECTION I - CONDITIONS**

Under **2. Your Duties After Loss:**

Paragraph **a.** is deleted and replaced by the following:

a. Promptly notify us or our agent about the loss;

Paragraph **g.(3)** is deleted and replaced by the following:

Ex.10, P.66

HO-AK (03-09)                                                                 Page 2 of 6

(3) Submit to examination under oath, while not in the presence of another **"insured"**, and sign the name;

However, you or any other **"insured"** are entitled to have counsel present during any examination taken under oath.

In the HO-3R and HO-6R under **3. Loss Settlement,** paragraph b. (1) is deleted and replaced by the following:

(1) When our cost to repair or replace the damaged property is $5,000 or less, we will pay you the full replacement cost amount without deduction for depreciation.

6. **Appraisal** is deleted and replaced by the following:

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may make a written demand for an appraisal for the loss. Within 10 days of receiving written demand from the other, each party will:

   a. Choose a competent appraiser; and

   b. Notify the other of that choice.

The two appraisers will promptly choose a competent and impartial umpire. If an umpire can not be agreed upon by the appraisers, you or we may request that the choice be made by a judge of a court of record in the state where the **"residence premises"** is located. Not later than 15 days after the umpire has been chosen, unless this time period is extended by the umpire, each appraiser will separately state, in writing, the amount of loss. If the appraisers submit a written report of an agreement on the amount of loss to us, that agreement will be binding. If they fail to agree, they will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding and set the amount of loss.

Each party will:

   a. Pay its own counsel and adjuster fees; and

   b. Bear those other expenses and fees which are incurred as a result of the appraisal, either in entirety or proportionately, as determined by the umpire.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the "**actual cash value**", replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance** is deleted and replaced by the following:

7. **Other Insurance.** Other insurance included the coverage and any deductible required by such other coverage.

If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the amount of insurance that applies under this policy bears to the total amount of insurance covering the loss.

This policy does not apply to motorized golf carts and their equipment and accessories when any other insurance also applies.

8. **Suit Against Us** is deleted and replaced by the following:

8. **Suit Against Us.** No action can be brought against us unless you have:

HO-AK (03-09)

Ex. 10, P. 67

Page 3 of 6

a. Given us notice of the loss,

b. Complied with all other policy provisions, and

c. Started the action

within three years after denial of the claim.

10. **Loss Payment** is deleted and replaced by the following:

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

The undisputed part of a claim will be paid in accordance with the terms of this Condition, even if other parts of the claim remain in dispute.

15. **Concealment, Misrepresentation or Fraud** is deleted and replaced by the following:

15. **Concealment, Misrepresentation or Fraud**

We provide coverage to no "**insureds**" under this policy in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements in the application for the policy:

a. That were fraudulent;

b. That were material either to the acceptance of the risk, to the hazard assumed by us; or

c. If we, in good faith, would not have:

(1) Issued the policy;

(2) Issued a policy in as large an amount, or at the same premium or rate; or

(3) Provided coverage with respect to the hazard resulting in a loss;

if the true facts had been made known to us as required either by the application for the policy or otherwise.

### SECTION II - LIABILITY EXCLUSIONS

Under 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others, items l., m. and o. are deleted.

The following exclusion is added:

Arising out of failure to supervise or the negligent supervision of a person that results in one or more of the excluded events in items i., j., q. and r. above.

### SECTION II - ADDITIONAL COVERAGES

1. **Claims Expenses.** Paragraph a. is deleted and replaced by the following:

a. Expenses incurred by us and costs taxed against any "**insured**" in any suit we defend. We will also pay that portion of the attorney's fees awarded as costs which does not exceed the amount allowed for a contested case in the schedule of attorney's fees contained in Alaska Civil Rule 82 for a judgment equal to the limits of this policy.

The attorney's fees provided by Alaska Civil Rule 82 for contested cases are:

20% of the first $25,000 of a judgment or claim settlement;

10% of the amounts over $25,000 of a judgment or claim settlement.

If a judgment against you exceeds such limits of liability, the attorneys fees awarded may exceed your coverage for attorneys fees. In such a case, **YOU WILL BE PERSONALLY RESPONSIBLE FOR THAT EXCESS AND THE PORTION OF THE JUDGMENT THAT EXCEEDS THE LIMITS OF LIABILITY.**

Ex.10, P.68

## SECTION II - CONDITIONS

3 **Concealment, Misrepresentation or Fraud** is deleted and replaced by the following:

3. **Concealment, Misrepresentation or Fraud**

   We do not provide coverage to any **insured** under this policy in any case involving misrepresentations, omissions, concealment of facts, or incorrect statements in the application for the policy:

   a. That were fraudulent;

   b. That were material either to the acceptance of the risk, or to the hazard assumed by us; or

   c. If we, in good faith, would not have:

      (1) Issued the policy;

      (2) Issued a policy in as large an amount or at the same premium or rate; or

      (3) Provided coverage with respect to the hazard resulting in a loss;

      if the true facts had been made known to us as required either by the application for the policy or otherwise.

## SECTIONS I AND II - CONDITIONS

4. **Cancellation.** Paragraph b. is deleted and replaced by the following:

   b. We may cancel this policy only for the reasons stated below by letting you and if you are 70 years of age or older, any person you designate to us in writing, know in writing of the date cancellation takes effect. This cancellation notice will be mailed to you at your address last known to us, and we will obtain a certificate of mailing; or provided to you electronically if we have your consent and agreement on file to receive documents electronically at your last known electronic address, and we will obtain an electronic confirmation of receipt by you. Proof of mailing, will be sufficient proof of notice.

   (1) Nonpayment of premium;

   (2) Conviction of the "**insured**" of a crime having as one of its necessary elements an act increasing a hazard insured against;

   (3) Discovery of fraud or material misrepresentation made by the "**insured**" or a representative of the "**insured**" in obtaining the insurance or by the "**insured**" in pursuing a claim under the policy;

   (4) Discovery of a grossly negligent act or omission by the **insured** that substantially increases the hazard insured against; or

   (5) Physical changes in the insured property that result in the property becoming uninsurable.

   We may cancel by letting you and if you are 70 years of age or older, any person you designate to us in writing, know at least:

   (1) 10 days before the date cancellation takes effect if we cancel for:

      (a) Conviction of the "**insured**" of a crime having as one of its necessary elements an act increasing a hazard insured against; or

      (b) Discovery of fraud or material misrepresentation made by the "**insured**" or a representative of the "**insured**" in obtaining the insurance or by the "**insured**" in pursuing a claim under the policy;

   (2) 20 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

   (3) 30 days before the date cancellation takes effect if we cancel for any other reason.

Ex. 10, p. 69