IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| The ESTATE OF JOSIAH WHEELER, pursuant to the assignment of rights of insureds Deborah Overly and Terry Summers, and KEITH WHEELER and RHETTA WHEELER, individually and as representatives of the Estate of Josiah Wheeler,<br><br>　　　　　　　　　　Plaintiffs,<br>　v.<br><br>GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, a subsidiary of USAA Insurance Company,<br><br>　　　　　　　　　　Defendant. | Case No. 4:20-cv-00041-SLG |

## ORDER ON CROSS-MOTIONS FOR DECLARATORY JUDGMENT

This matter comes before the Court on Plaintiffs' *Cross Motion for Declaratory Relief on Coverage* at Docket 26 and Defendant's *Cross Motion for Declaratory Judgment* at Docket 32. Because the Federal Rules of Civil Procedure do not provide for "motions for declaratory judgment," the Court construes the parties' motions to be motions for summary judgment.[1]

---

[1] *See Kam-Ko Bio-Pharm Trading Co.–Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) ("[A] party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment. . . . The only way [a] motion [for declaratory judgment] can be construed as being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment." (quoting *Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995))).

For the reasons discussed herein, the Court will deny Plaintiffs' motion and grant Defendant's motion.

## BACKGROUND

The underlying facts are not generally in dispute, and are as follows: Plaintiffs Keith and Rhetta Wheeler have filed this suit both individually and on behalf of the estate of their son, Josiah Wheeler. Josiah was a 17-year-old boy who died on or about January 4, 2019, while using the bathtub at a cabin in Tok, Alaska. An autopsy revealed that Josiah died from acute carbon monoxide poisoning. The deputy fire marshal who investigated Josiah's death determined that the cabin's water heater was the source of the fatal carbon monoxide. During his investigation, the deputy fire marshal discovered that the water heater had been installed in the same small bathroom as the bathtub, and that its flue connection was not connected to any ducting or other venting system. This contravened the water heater's instruction manual, which cautioned not to install it in small, poorly ventilated rooms such as bathrooms and bedrooms, and specified that it should be connected to a venting system to safely exhaust carbon monoxide and other flue gases.[2]

Josiah had been renting the cabin from its owners, Deborah Overly and Terry Summers. Overly and Summers submitted a homeowners' insurance claim to

---

[2] Docket 9-2 at 3–7 (State Trooper Incident Report & Supplementary Reports).

Defendant Garrison Property and Casualty Insurance Company ("Garrison"), through whom they had a homeowners' general liability policy covering the cabin.[3] Relevant here, the policy contained a pollution exclusion clause, which provided that the policy's personal liability coverage did not apply to any bodily injury "[a]rising out of the . . . discharge, dispersal, release, escape, seepage or migration of 'pollutants' however caused and whenever occurring."[4] The policy defined "pollutants" to be "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[5] Deeming carbon monoxide to be a "pollutant" for the purposes of the policy, Garrison denied coverage.[6]

In August 2020, Overly and Summers signed a "Confession of Judgment" admitting that their negligence caused Josiah's death and confessing judgment to the Wheelers in the total amount of $1,680,000 in damages: $1,400,000 for Josiah's wrongful death, plus $140,000 to each parent for loss of consortium.[7] In

---

[3] Plaintiffs allege that Garrison is a subsidiary of USAA Insurance Company and include it as such in their case caption. Garrison denies this. Docket 55 at 2, ¶ 3 (Answer).

[4] Docket 26-13 at 19 (Ex. 10); Docket 26-14 at 1 (Ex. 10).

[5] Docket 26-12 at 12 (Ex. 10).

[6] Docket 1-1 at 2–3 (Denial of Coverage Letter).

[7] Docket 1-2 at 1–2 (Confession of J.).

a separate document, Overly and Summers also assigned to Plaintiffs their rights to pursue coverage claims against Garrison.[8]

On December 4, 2020, Plaintiffs initiated this suit against Garrison. They seek a declaratory judgment that Josiah's death was covered under the policy and an award of "appropriate damages."[9] Plaintiffs filed proof of service of the complaint and summons on February 3, 2021.[10] Garrison did not initially appear, and the Clerk of Court entered a default.[11] Plaintiffs then moved for a default judgment,[12] which the Court granted on May 4, 2021.[13] On September 28, 2021, Garrison appeared and moved to set aside the default judgment.[14] The Court granted Garrison's motion and set aside the default judgment on February 1, 2022.[15]

In their opposition to Garrison's motion to set aside the default judgment, Plaintiffs also included a "cross motion for declaratory order" seeking a ruling that

---

[8] Docket 1-3 at 1 (Assignment of Rights).

[9] Docket 1 at 4, ¶ 12 (Compl.).

[10] Docket 6 (Certificate of Service).

[11] Docket 7 (Mot. for Entry of Default); Docket 8 (Entry of Default).

[12] Docket 9 (Mot. for Default J.).

[13] Docket 10 (Default J.).

[14] Docket 14 (Notice of Appearance); Docket 15 (Mot. to Set Aside Default).

[15] Docket 50 (Minute Entry).

Overly and Summers's policy covered Wheeler's death.[16] Garrison opposed Plaintiffs' motion and filed its own "cross motion for declaratory judgment."[17] The motions have been fully briefed. At Plaintiffs' request, the Court heard oral argument on February 1, 2022.[18]

## LEGAL STANDARDS

*A. Summary Judgment*

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[19]

---

[16] Docket 26 at 25–39. Plaintiffs' inclusion of the motion in their opposition memorandum contravened Local Civil Rule 7.1(e), which requires all motions to be filed individually unless a specific rule provides otherwise.

[17] Docket 32.

[18] Docket 50. At oral argument, the Court stated that Garrison had "unclean hands" because it failed to register with the Alaska Division of Corporations. But as Garrison subsequently correctly pointed out, Docket 51 at 1–2, Alaska's insurance statutes exempt authorized out-of-state insurers from the Alaska Corporations Code. AS 21.03.010(b). Because Garrison is an authorized out-of-state insurer, *see* Alaska Div. of Ins., Online Insurer/Company Search, https://sbs.naic.org/solar-external-lookup/lookup/company/summary/84275297?jurisdiction=AK (last visited May 24, 2022), Garrison was not required to register with the Division of Corporations. The Court hereby corrects the record to reflect that Garrison does not have unclean hands in this matter.

[19] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).

### B. Alaska Insurance Contract Interpretation

Under Alaska law,[20] courts construe insurance contracts according to the principle of "reasonable expectations."[21] This principle requires courts to construe insurance contracts "so as to provide that coverage which a layperson would have reasonably expected from a lay interpretation of the policy terms."[22] An insured's expectation of coverage must be "objectively reasonable."[23] To determine what an insured party's reasonable expectations were, Alaska law directs a court to "look[] to (1) the language of the disputed provisions in the policy, (2) other provisions in

---

[20] Because Plaintiffs' claims arise under state law, the Court applies Alaska substantive law to them. *See, e.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("Under the rule of [*Erie Railroad*], 'federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law.'" (citation omitted) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996))).

[21] *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994) (quoting *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988)).

[22] *Downing v. Country Life Ins. Co.*, 473 P.3d 699, 704 (Alaska 2020) (quoting *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)); *see also Bering Strait*, 873 P.2d at 1294 (defining the reasonable expectations principle as the concept that "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations" (quoting *Lloyds*, 755 P.2d at 400)).

[23] *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1138 (Alaska 2000) (quoting *Lloyds*, 755 P.2d at 400); *see also State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1047 (Alaska 1996) ("[S]ince most insureds develop an expectation that every loss will be covered, the reasonable expectation doctrine 'must be limited by something more than the fervent hope usually engendered by loss.'" (quoting *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 826–27 (Ariz. Ct. App. 1990))).

the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[24] "[B]ecause of inequities in bargaining power, [Alaska law] construe[s] coverage broadly and exclusions narrowly, in favor of insureds."[25] Alaska law will, however, recognize a coverage restriction "if . . . plain language limits the coverage of [the] policy."[26]

Alaska law provides that if an insurance policy provision is ambiguous, a court "must accept the interpretation that most favors the insured."[27] However, "the mere fact that two parties to an insurance contract have different subjective interpretations of that contract does not make it ambiguous. Rather, ambiguity exists only when the contract, taken as a whole, is *reasonably* subject to differing interpretations."[28]

## DISCUSSION

As the Court construes their motions,[29] the parties have cross-moved for summary judgment on the dispositive question of whether the pollution exclusion

---

[24] *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

[25] *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015) (first alteration in original) (quoting *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008)).

[26] *Whittier Props.*, 185 P.3d at 88.

[27] *Id.* at 90.

[28] *Downing*, 473 P.3d at 704 (footnote omitted) (internal quotation marks omitted) (quoting *Dugan v. Atlanta Cas. Cos.*, 113 P.3d 652, 655 (Alaska 2005)).

[29] *See supra* note 1 and accompanying text.

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 7 of 17

clause in Overly and Summers' insurance policy excludes coverage for a death caused by carbon monoxide in the cabin. There are no genuine disputes of material fact regarding the circumstances of Josiah's death or the applicable policy language.[30] The parties agree that the resolution of their dispute turns on the interpretation of the policy,[31] which is a question of law for the Court.[32]

Plaintiffs' position is that the policy's exclusion clause does not exclude coverage for Josiah's death. They assert that the exclusion clause, "by its own terms, describes pollution as the unintentional escape of pollutants into the environment from containers that were meant to keep the pollutants sequestered."[33] Reasoning that a water heater is not a "container . . . meant to keep [a] pollutant[] sequestered," they assert that the water heater's discharge of carbon monoxide was not "pollution" as defined in the policy.[34] Plaintiffs also assert that the policy must be read to contain implied "building heating" and "hostile fire" exceptions to the clause to avoid an overly broad interpretation that would

---

[30] *See* Docket 1 at 3, ¶¶ 6, 9; Docket 55 at 2–3, ¶¶ 6, 9.

[31] *See* Docket 32 at 22–23 (asserting that summary judgment in its favor would entitle Garrison to dismissal of this case); Docket 58 at 2 (stating that Plaintiffs believe "[t]here should be no issue as to whether or not the motions pending are dispositive of the case").

[32] *Exxon Corp. v. State*, 40 P.3d 786, 792 (Alaska 2001) ("Where . . . there is no conflict in extrinsic evidence, the interpretation of [a] contract is a question of law." (first alteration in original) (quoting *Leisnoi, Inc. v. Stratman*, 956 P.2d 452, 454 (Alaska 1998))).

[33] Docket 26 at 27.

[34] Docket 26 at 27–28.

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 8 of 17

"consume the entire . . . policy."[35] Lastly, observing that no Alaska court has ever considered whether pollution exclusion clauses cover carbon monoxide, Plaintiffs point to decisions from Nevada and other jurisdictions holding the application of such clauses to carbon monoxide to be ambiguous.[36] They urge the Court to conclude similarly and, following Alaska law, to resolve the ambiguity in their favor.[37]

Garrison disagrees that the pollution exclusion clause is inapplicable, although it agrees that whether pollution exclusion clauses cover carbon monoxide is a matter of first impression under Alaska law. Garrison maintains, citing a recent *North Dakota Law Review* article, that "[a] majority of courts" hold pollution exclusion clauses "to bar coverage for personal injuries resulting from carbon monoxide exposure."[38] Garrison maintains that the clause's application to carbon monoxide is not ambiguous. Garrison further asserts that the clause's language, the policy's other provisions, and relevant extrinsic evidence all indicate that an

---

[35] Docket 26 at 28–30.

[36] *See* Docket 26 at 35–38 (citing; *Stoney Run Co. v. Prudential–LMI Com. Ins. Co.*, 47 F.3d 34 (2d Cir. 1995); *Reg'l Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494 (10th Cir. 1994); *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614 (Nev. 2014); *Am. Nat'l Prop. & Cas. Co. v. Wyatt*, 400 S.W.3d 417 (Mo. Ct. App. 2013); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997); *Thompson v. Temple*, 580 So. 2d 1133 (La. Ct. App. 1991)).

[37] Docket 26 at 25–39.

[38] Docket 32 at 12 (citing Chad G. Marzen, *The Pollution Exclusion and Carbon Monoxide*, 93 N.D. L. Rev. 219 (2018)).

insured in Plaintiffs' position could not have reasonably expected the clause to include coverage for bodily injury caused by carbon monoxide.[39]

### C. Whether the Policy's Pollution Exclusion Clause's Application to Carbon Monoxide is Ambiguous

Pollution exclusion clauses have been "repeatedly litigated" across the United States, and most states' interpretations of them "fall into 'one of two broad camps.'"[40] "Some courts apply the exclusion literally because they find the terms to be clear and unambiguous. Other courts have limited the exclusion to situations involving traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find that the exclusion contradicts policyholders' reasonable expectations."[41] The Ninth Circuit has interpreted these clauses by considering whether the state in question has an established position on pollution exclusion clauses and, if not, considering whether there is an indication as to which "camp" the state would likely fall into.[42]

The Alaska Supreme Court has only once had occasion to interpret a pollution exclusion clause. In that case, *Whittier Properties, Inc. v. Alaska National*

---

[39] Docket 32 at 5–23.

[40] *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903, 908 (9th Cir. 2012) (quoting *Apana v. TIG Ins. Co.*, 574 F.3d 679, 682 (9th Cir. 2009)).

[41] *Apana*, 574 F.3d at 682 (citations omitted).

[42] *See Century Sur.*, 677 F.3d at 907–09 (addressing carbon monoxide); *Apana*, 574 F.3d at 683–84 (addressing noxious chemical fumes); *see also Colony Ins. Co. v. Victory Constr. LLC*, 239 F. Supp. 3d 1279, 1283–89 (D. Or. 2017) (addressing carbon monoxide).

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 10 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 10 of 17

*Insurance Co.*,[43] an underground storage tank leaked roughly 50,000 gallons of gasoline into the surrounding soil. The tank's owner had a commercial general liability insurance policy, but the policy contained a clause excluding property damage arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants."[44] The policy defined a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[45] The Alaska Supreme Court held that the exclusion clause unambiguously covered the gasoline leak. Noting that most jurisdictions had concluded similarly, the court reasoned that "even though gasoline . . . is a 'product' for purposes of other parts of the insurance policy, when the gasoline escapes or reaches a location where it is no longer a useful product it is fairly considered a pollutant."[46] In addition to holding that the clause was unambiguous, the court also examined the policy's other provisions and several items of extrinsic evidence and concluded that the insured party could not have reasonably expected the policy to cover the gasoline leak.[47]

---

[43] 185 P.3d 84 (Alaska 2008).

[44] *Id.* at 89.

[45] *Id.* at 87, 89–91.

[46] *Id.* at 90–91 & n.29.

[47] *Id.* at 91–92.

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 11 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 11 of 17

In *Whittier Properties*, the Alaska Supreme Court only specifically addressed coverage for a gasoline leak in a commercial general liability policy and did not address pollution exclusion policies generally or carbon monoxide inhalation in particular.[48] And as the parties have observed, the Alaska Supreme Court has not addressed when a pollution exclusion applies to carbon monoxide. But the court's decision in *Whittier Properties* suggests that it would likely interpret the exclusion literally. In ruling that the clause at issue unambiguously applied to gasoline, the *Whittier Properties* court approvingly cited an *amicus curiae*'s statement that "[o]ver 100 appellate court cases and 36 jurisdictions have ruled that pollution exclusions like the one at issue here unambiguously bar coverage for harms caused by exposure to many different types of pollutants."[49] The court indicated that it viewed this to be the "better-reasoned approach,"[50] and it supported its view with citations to cases involving inhalation of fumes, not just leaks of fuel.[51] Thus,

---

[48] *See id.* at 90–91 ("Although we have not, before now, had the opportunity to determine whether the absolute pollution exclusion generally contained in commercial general liability policies is ambiguous, numerous jurisdictions have addressed whether leaked gasoline is a pollutant within the meaning of the policy exclusion. . . . We hold that there is no ambiguity because . . . when the gasoline escapes . . . it is fairly considered a pollutant.").

[49] *Id.* at 90 n.29 (alteration in original).

[50] *Id.* at 90.

[51] *Id.* at 90 n.29 (citing *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998) and *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733 (Wash. 2005), in which both courts concluded that pollution exclusion clauses unambiguously barred coverage for injuries caused by fume inhalation).

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 12 of 17

Case 4:20-cv-00041-SLG Document 59 Filed 05/25/22 Page 12 of 17

even though Alaska judicial policy "construe[s] coverage broadly and exclusions narrowly, in favor of insureds,"[52] the Court concludes that the Alaska Supreme Court appears to have placed the state into the literal-interpretation "camp."[53] As such, that court would likely interpret the pollution exclusion clause at issue here to unambiguously apply to the death caused by the inhalation of the discharged carbon monoxide, as that injury is plainly covered by the literal terms of the pollution exclusion.

> D. Whether Plaintiffs Reasonably Expected the Policy to Cover Carbon Monoxide Poisoning

Having concluded that the clause is not ambiguous, the Court must next determine whether Overly and Summers nonetheless could have had an objectively reasonable expectation that their policy would cover bodily injury from carbon monoxide.[54] The pollution exclusion clause excludes coverage for bodily injury "[a]rising out of the ... discharge ... of 'pollutants,'" and it defines

---

[52] *Devine*, 350 P.3d at 786 (quoting *Whittier Props.*, 185 P.3d at 88).

[53] In *Apana*, the Ninth Circuit interpreted the Alaska Supreme Court's *Whittier Properties* decision to indicate that Alaska falls into the "camp" of jurisdictions that interpret pollution exclusion clauses literally. *See* 574 F.3d at 682 ("Some courts apply the [pollution] exclusion literally because they find the terms to be clear and unambiguous. *See [Whittier Properties]*, 185 P.3d 84, 89–92 (Alaska 2008); . . . .").

[54] *See Whittier Props.*, 185 P.3d at 91 (citing *Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1235 (Alaska 2007)) ("We can construe an insurance policy under the reasonable expectations doctrine without finding ambiguity in the policy; therefore, even though we have determined that the exclusion is not ambiguous, [the insured] may still prevail under the reasonable expectations doctrine.").

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 13 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 13 of 17

"pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."[55]

It would be objectively unreasonable for an insured to expect this language to not exclude coverage for injuries caused by the inhalation of carbon monoxide. First, an insured would expect that carbon monoxide would fall within the policy's definition of "pollutant." Carbon monoxide is a gas,[56] and, given its toxic effect upon inhalation, it reasonably falls within the "fume" category of the "gaseous . . . contaminant" definition in the policy.[57] Although the policy does not define "contaminant," the common definition of a contaminant is a substance that contaminates, which means "to make unfit for use by the introduction of unwholesome or undesirable elements."[58] It would be objectively unreasonable for Overly and Summers to expect this definition of "pollutant" not to encompass carbon monoxide.

Moreover, the clause's plain language also suggests that it applies to carbon monoxide exhausted out of the water heater. The clause excludes liability for injury caused by the "discharge, dispersal, release, escape, seepage or migration of

---

[55] Docket 26-14 at 1; Docket 26-12 at 12.

[56] *Carbon monoxide*, McGraw-Hill Dictionary of Scientific and Technical Terms 329 (6th ed. 2003).

[57] *See Fume*, Merriam-Webster Dictionary (online ed. 2022) ("A smoke, vapor, or gas, especially when irritating or offensive.").

[58] *Contaminant & Contaminate*, Merriam-Webster Dictionary (online ed. 2022).

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 14 of 17

'pollutants' however caused and whenever occurring."⁵⁹ This is a broadly worded definition that plainly encompasses exhaust from a water heater. Plaintiffs have not identified any other policy provisions or extrinsic evidence that might alter this interpretation of the policy's language. Therefore, the Court concludes that the only objectively reasonable expectation by an insured is that the policy excluded coverage for bodily injury caused by carbon monoxide exhausted from the cabin's water heater.

In addition, the Court will not read any "hostile fire" or "building heating" exceptions into the policy. Alaska contract law allows a court to "fill gaps" by "supply[ing] an essential term that has been omitted from an otherwise sufficiently defined contract" to "ensure fairness where the reasonable expectations of the parties are clear."⁶⁰ But a court may only do so "[when], in fact, there is an essential term or circumstance for which the parties failed to plan."⁶¹ Alaska law "does not permit a court 'to rewrite a contract for the purpose of accomplishing that which, in the court's opinion, might appear proper' or to 'create substantive rights under the guise of doing equity,' except in limited circumstances."⁶²

---

⁵⁹ Docket 26-14 at 1.

⁶⁰ *Renaissance Alaska, LLC v. Rutter & Wilbanks Corp.*, 263 P.3d 35, 40 (Alaska 2011) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 386 (Alaska 2004)).

⁶¹ *Id.* (quoting *Casey*, 92 P.3d at 386).

⁶² *N. Pac. Processors, Inc. v. City & Borough of Yakutat*, 113 P.3d 575, 586 (Alaska 2005) (footnotes omitted) (internal quotation marks omitted) (quoting *Lathrop Co. v. Lampert*, 583 P.2d 789, 790 (Alaska 1978)). The "limited circumstances" in which Alaska law allows courts to

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 15 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 15 of 17

In the case Plaintiffs cite to support "reading in" these "building heating" and "hostile fire" exceptions, the insurance policy expressly contained the exceptions on its face.[63] But here, the policy contained no such exceptions. Plaintiffs have provided no evidence that the "hostile fire" and/or "building heating" exceptions were essential terms to the present policy that the parties inadvertently omitted. Nor have Plaintiffs demonstrated that the insureds reasonably expected that the policy would contain those exceptions. Accordingly, the Court concludes that there were no relevant "gaps" in the policy to fill, and it will not read the "hostile fire" or "building heating" exceptions into Overly and Summers's policy.

No other parts of the policy, extrinsic evidence, or case law interpreting similar provisions support an alternative reasonable expectation for an insured in Overly and Summers's position. Plaintiffs have not identified any other portions of the policy or proffered any extrinsic evidence that might support their interpretation. And, as described earlier, the Alaska Supreme Court's *Whittier Properties* decision supports Garrison's interpretation of the policy, not Plaintiffs'.

---

reform contracts include "situations involving mistake of fact, fraud, mutuality of mistake, and cases in which 'a party executes a written instrument knowing the intention of the other party as to the terms to be embodied therein, and knowing that the writing does not accurately express that intention.'" *Lathrop Co.*, 583 P.2d at 790 (footnotes omitted) (quoting *Holiday Inns of Am., Inc. v. Peck*, 520 P.2d 87, 94 (Alaska 1974)). None of those circumstances are alleged here.

[63] *Century Sur.*, 677 F.3d at 906 ("However, this [pollution exclusion clause] does not apply to: (i) 'Bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building; . . . (iii) 'Bodily injury' or 'property damage' arising out of heat, smoke or fumes from a 'hostile fire' . . . ." (second and third alteration in original)).

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 16 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 16 of 17

Under Alaska law, the pollution exclusion clause in this case unambiguously applies to the carbon monoxide at issue here. Based on the plain language of the clause, it would not have been objectively reasonable for the insureds to expect that their policy would cover bodily injury caused by carbon monoxide exhausted from the water heater. Consequently, Garrison is entitled to a summary judgment ruling that Josiah Wheeler's death was excluded from coverage under Overly and Summers' homeowners' insurance policy.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion at Docket 26 is DENIED, and Garrison's motion at Docket 32 is GRANTED. The Clerk of Court is directed to enter a final judgment accordingly.

IT IS SO ORDERED.

DATED this 25 day of May 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 4:20-cv-00041-SLG, *Est. of Wheeler, et al. v. Garrison Prop. & Cas. Ins. Co.*
Decision and Order
Page 17 of 17

Case 4:20-cv-00041-SLG   Document 59   Filed 05/25/22   Page 17 of 17